UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| RACHEL J. ADAMS d/b/a READINGS BY FAITH | CIVIL ACTION NO. 11-1484 |
| VERSUS | DISTRICT JUDGE DEE D. DRELL |
| CITY OF ALEXANDRIA | MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Before the court is plaintiff's motion for summary judgment, doc. #5, referred to me by the district judge for report and recommendation.

This is a §1983 suit for declaratory judgment and injunction by Rachel J. Adams (Adams) in which she asserts that she is under imminent threat of arrest by City of Alexandria (City) officials as a result of her exercise of her free speech and other Constitutional rights. Plaintiff claims that she was born with the ability to "understand and appreciate Tarot cards[1], telling of futures, psychic abilities and palmistry[2]." She practices card reading, fortune telling, telling of futures, and palmistry in Alexandria. She asserts in brief that she does not charge a fee but accepts donations.[3]

---

[1] Tarot cards are a set of 22 pictorial playing cards used in fortune telling and in the game of tarok.

[2] Palmistry is the art or practice of reading a person's character or future from the markings on his palms.

[3] This information is not in evidence.

Plaintiff alleges that she procured a building in Alexandria zoned for commercial purposes and attempted to obtain the necessary permits for it. What she didn't foresee, however, was that City officials would tell her that such business was prohibited by City of Alexandria Code of Ordinances, §15-127. Shortly thereafter, plaintiff was visited by an Alexandria City police officer who issued her a summons for fortune-telling in violation of the ordinance. She was ordered to appear in criminal court on September 13, 2011, according to her complaint. The parties have not favored the court with information as to the outcome of that proceeding.

Plaintiff claims that the ordinance is arbitrary, capricious, overly broad, vague and unconstitutional. Specifically, plaintiff claims that the ordinance violates her due process rights and right to privacy as provided in Art. I § 2 and 5, respectively, of the Louisiana Constitution, her due process rights under the 14th Amendment to the United States Constitution, her equal protection rights under the 14th Amendment, her right to life and liberty under Article 13, as well as her right to privacy under other provisions of the Constitution. She also asserts that her free speech rights were violated and her right to the free exercise of her religion under the First Amendment to the United States Constitution were violated.

No evidence was submitted by either party and the parties have informed the court that they believe the case simply presents a legal question. Statements of material fact were submitted.

## The law of summary judgment

As the Fifth Circuit Court of Appeals explained in <u>Seacor Holdings, Inc. v. Commonwealth Ins. Co.</u>, 635 F.3d 675, 680 (5th Cir. 2011):

> A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law. Fed.R.Civ.P. 56(a); see Celotex Corp v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a). The amended rule contains no substantive change to the standard. An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)[W]e consider all evidence in the light most favorable to the party resisting the motion. Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir.1983). (Quotations and internal footnote references omitted.)

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325, 106 S.Ct. 2548. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See Celotex, 106 S.Ct. 2548. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. See id. at 325, 106 S.Ct. 2548; Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994); Austin v. Will-Burt Company, 361 F.3d 862 (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by

"conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, 37 F.3d at 1075.

All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet her initial burden, summary judgment should be denied. Id.

## Analysis

Plaintiff has limited the bases for her motion for summary judgment to the issues of freedom of speech violations, equal protection violations because of selective enforcement, and vagueness of the ordinance. Plaintiff relies principally on the case of Trimble v. City of New Iberia, 73 F. Supp. 2d 659 (W.D.La. 1999), a case decided in this district by Judge Melançon.

Referring to an article in the Alexandria Daily Town Talk, which is not in evidence in this case, the City argues that plaintiff charges a fee for her readings. Therefore, it reasons, her speech is commercial speech and implies that it may more easily be regulated where, as here, the purpose of the ordinance is to prohibit "inherently deceptive speech". The City also takes issue with plaintiff's vagueness claim and with her assertion that the ordinance is selectively enforced.

The ordinance provides:

It shall be unlawful for any person to engage in the business or practice of palmistry, card reading, astrology, fortune-telling, phrenology[4], mediums or activities of a similar nature within the city, regardless of whether a fee is charged directly or indirectly, or whether the services are rendered without charge.
 City of Alexandria Code of Ordinances, §15-127.

A penalty of up to $500 per day may be assessed for violation of the ordinance. §15-6.[5]

---

[4] Phrenology is the study of the conformation of the skull based on the belief that it is indicative of mental faculties and character. [Footnote is not a part of the ordinance.]

[5] Although not raised by the parties, the court, *ex proprio motu*, notices that the ordinance appears to be contrary to state law. The statute, LSA-R.S. 4:7 provides that parishes may "regulate and restrict" and

Freedom of speech

The court finds it curious that the City has avoided in brief discussing the only case we have found within the Fifth Circuit (which is cited in plaintiff's brief), that deals with regulation of fortune tellers: Trimble, supra, authored by Judge Melançon in the Lafayette Division of the Western District. In Trimble, the court considered a New Iberia ordinance that plaintiffs there contended violated the First Amendment by prohibiting speech based on content. Plaintiff's claims here are essentially the same. Here, as in Trimble, the City opposes the motion and argues that Alexandria's ordinance regulates commercial speech, not content based speech. Implicit in the City's brief is its recognition that, as Judge Melançon noted, "[c]ommercial advertising constitutes paradigmatic commercial speech under the Supreme Court's standard because its fundamental purpose is to propose an economic transaction." Commodity Trend Service, Inc. v. Commodity Futures Trading Commission, 149 F.3d 679, 684 (7th Cir.1998). Stated another way, "[w]here the speaker's speech does not propose a commercial transaction between itself and its audience, the speech is not commercial." Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico, 478 U.S. 328, 340, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986).

The City's reasoning that the ordinance regulates advertising and thus commercial speech, not content based speech, goes like this: "[e]very psychic reading that Adams gives serves, in part, as an advertisement seeking to elicit business [and therefore, it is commercial speech]." City brief, p. 4.

---

tax fortune-tellers, among others. It does not provide authority to prohibit fortune telling. While the statute specifically provides that it does not deprive municipalities of the authority to "adopt and enforce ordinances on the same subject matter" it can be persuasively argued that the municipal power may not be in derogation of the stated policy of the State which is to allow regulation, restriction and taxation, but not prohibition. Other statutes show that the State differentiates between regulation and prohibition. See, for example, LSA-R.S.26:463; 51:191. Therefore, the municipal ordinance is arguably contrary to state law.

This attempt at "alchemy" by the City to turn content based speech into commercial speech just doesn't shine.  Indeed, if the City's reasoning were true, then all speech made by a business would be commercial speech and thus subject to government limitations, because everything a business does, to apply the City's reasoning serves to advertise.  Judge Melançon explained it best:

> "Here, the challenged speech of the plaintiffs is not commercial speech. Just because someone may pay a fee for the plaintiffs' services, the telling of fortunes and the giving of spiritual advice does not propose a commercial transaction. 'There is a distinct difference between the offer to tell a fortune ("I'll tell your fortune for twenty dollars."), which is commercial speech, and the actual telling of the fortune ("I see in your future ..."), which is not.' Argello v. City of Lincoln, 143 F.3d 1152, 1153 (8th Cir.1998). The Ordinance at issue does not propose to limit the advertising of fortune telling. The Ordinance expressly forbids the practice of fortune telling, regardless of whether the services are provided for a fee. As the Ordinance does not involve the regulation of commercial speech, it will not be subjected to the less than strict review afforded commercial speech regulations."

The ordinance here is an attempt to ban content based speech altogether, as was the case in Trimble. As Judge Meloncon observed there:

> "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).
>
> "Because the 'First Amendment generally prevents government from proscribing speech or even expressive conduct because of disapproval of the ideas expressed,' R.A.V., 505 U.S. at

382, 112 S.Ct. 2538, content-based regulations are presumptively invalid. Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502 U.S. 105, 115, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (citations omitted). Only where a content-based regulation survives strict scrutiny review will it be upheld. Id. Under strict scrutiny, the government must show that its regulation is reasonably necessary to achieve a compelling interest. R.A.V., 505 U.S. at 395, 112 S.Ct. 2538."

I find that the ordinance regulates content based speech, not commercial speech, and, therefore, strict scrutiny must be applied to it. That is, the government must show the ordinance is reasonably necessary to achieve a compelling interest.

Based on its own clairvoyance, the City has decreed in brief that it is impossible to predict the future, and contends the business of fortune-telling is a fraud and is inherently deceptive. Ignoring the possibility that, for many people, engaging a fortune-teller could be just for fun–a novelty and a form of entertainment like casino gambling or trying to throw the softball through the rings to win the big bear on the top shelf at the fair[6]–the City argues that prohibiting fortune-telling is necessary in order to prevent fraud and misleading the public. It suggests, without evidence, that the nature of plaintiff's business creates the incentive to give false information to her clients "in the form of brighter futures than they might have in reality[7]." Of course, a theoretical incentive to cheat could be said of almost every, if not every, for-profit business.

The City suggests that "fortune-tellers have no demonstrable facts upon which to base their

---

[6] In such cases, if there is a fraudulent element, it is one that people who choose to engage in those activities are willing to accept to as a cost of entertainment.

[7] The City's concern that it must protect its citizens from being more hopeful than they should be is perplexing.

7

predictions." But, as alluded to by Judge Melançon, neither did Columbus, (at least according to his detractors at the time) when he was adamant that the world was round, when many believed the world was, in fact, flat. Had a group of all-knowing elders passed an ordinance then proscribing his beliefs, perhaps we would all still be afraid to take a step for fear of stepping off the precipice and falling to infinity.

The danger of the government deciding what is true and not true, real and unreal, should be obvious. For example, some might say that a belief in God or in a particular religion, for example, or in the "Book of Revelations"[8] is not supported by demonstrable facts. Books that repeat the predictions of Nostradamus and the daily newspaper horoscope could be banned under the City's reasoning.

If there is to be progress for mankind, men and women must be allowed to dream, imagine, and be visionaries for the future even if there are then no "demonstrable facts" to support their fantasies. And they should be able to share their dreams, imaginations and visions with others free of government interference. While some of those who sometimes predict the future can be said to base their prognostications on education, training and experience–doctors and insurance companies estimating how long someone might live, auto mechanics opining as to how long your brakes will last, even lawyers predicting a jury's likely verdict– there should be no government prohibition of those with fewer facts, gazing into the future and voicing their beliefs as well. To apply the ordinance literally would outlaw every "amateur psychiatrist, parlor sage and barstool philosopher[9]" in

---

[8] Holy Bible

[9] A line from "The Deep Blue Goodbye", a novel by John D. MacDonald, John D. MacDonald Publishing, Inc., 1964.

Alexandria who dares to suggest to another what the future may hold.

My use of allegory and analogy is intended to demonstrate why we cannot afford to allow government to squelch free thought and speech without a compelling interest, and why even a fortune-teller's speech must be protected. For a government to believe that it knows all that is true and real, no matter how obvious it thinks it is, is arrogance, pure and simple. Our Constitution protects us from such government oppression.

In this case, as in Trimble, the ordinance does not pass strict scrutiny. As shown above, the lack of demonstrable facts to support a belief does not equate to fraud and deception. While it is fraud and not predicting the future which is the City's concern, there are more precise ways of dealing with fraud including prosecution under state laws against theft and which prohibit unfair trade practices. The City ordinance, §15-127 is not the least restrictive means of protecting against the nefarious behavior of fortune tellers that the City "foresees". Wooley v. Maynard, 97 S. Ct. 1428 (1977), cited in Trimble.

Judge Melançon's opinion in Trimble, a decision from another division of this court, is not precedent, that is, this division is not bound to follow it. Nevertheless, it is well researched and reasoned and is persuasive and, indeed, compelling. Therefore, I recommend that this division follow Judge Melançon's excellent analysis in Trimble and find the Alexandria ordinance violative of the First Amendment of the United States Constitution.[10] It is, therefore, not necessary to decide whether the ordinance also violates the Equal Protection Clause or violates the Due Process Clause as being

---

[10] Accord, see: Nefedro v. Montgomery County, 996 A.2d 850 (2010); Angeline v. Mahoning County Agr. Soc., 993 F. Supp. 627 (N.D. Ohio 1998). I also recognize that other cases, primarily older ones, can be cited which found prohibitions on fortune telling to have passed First Amendment scrutiny. I can only say that I disagree with the analysis and result of such cases and, as mentioned above, I find Judge Melançon's reasoning both compelling and legally correct.

vague.

Based on the foregoing analysis, it appears that a decision in favor of the City is not in the cards. A declaratory judgment should be entered in favor of the plaintiff. Further, based on the reasoning of Judge Melançon in <u>Trimble</u>, an injunction does not appear necessary at this time.

Therefore, IT IS RECOMMENDED that a declaratory judgment be entered and that the City of Alexandria Ordinance 15-127 be declared unconstitutional as violating citizens' rights under the First Amendment of the United States Constitution.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)© and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection tot he magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this 20th day of June, 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE